**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEANGELO THOMAS,

      Petitioner,                         Civil No. 2:11-CV-14363
                                              HONORABLE ARTHUR J. TARNOW
v.                                       UNITED STATES DISTRICT JUDGE

MITCH PERRY,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY

      Deangelo Thomas, ("petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 through his attorney James Sterling Lawrence, in which he challenges his conviction for assault with intent to commit murder, M.C.L.A. 750.83, discharging a weapon at a dwelling, M.C.L.A. 750.234b, carrying a firearm with unlawful intent, M.C.L.A. 750.226, felon in possession of a firearm, M.C.L.A. 750.224a, and felony-firearm, M.C.L.A. 750.227b.  For the reasons that follow, the petition for writ of habeas corpus is **DENIED**.  The Court will issue petitioner a certificate of appealability.

### I. Background

      Petitioner was convicted of the above offenses following a bench trial in the Wayne County Circuit Court.  Petitioner was acquitted of an additional assault with intent to commit murder charge.

*Thomas v. Perry,* No. 2:11-CV-14363

Robert Tait and his son, Mario Tait, lived together in a house in Detroit. (Tr. 6/23/04, pp. 14-15, 52, 57). Mario Tait had known petitioner for five to six years through petitioner's brother. Petitioner's nickname was "Bird," and he lived at the other end of the Taits' street. (*Id.,* p. 58).

On Monday, May 19, 2003, petitioner came to the Taits' home at about  10:15 a.m., and either rang the doorbell or knocked. (*Id.,* pp. 16-17, 41-42, 59). Robert Tait answered the door. Petitioner asked to speak with Mario. (*Id.,* pp.  17-18, 39, 60). Robert informed petitioner that Mario was not home, even though Mario was upstairs at the time with his girlfriend Mary Smith. (*Id.,* pp. 18, 43, 59, 83). Petitioner explained that he wished to speak to Mario about a Monte Carlo that had previously belonged to Mario, but that petitioner claimed he now owned. (*Id.,* pp. 19, 60). Robert informed petitioner that he had received information from an impound lot that this vehicle belonged to his son Mario. Petitioner insisted that the car belonged to him. Robert and petitioner began arguing over whether the car was owned by petitioner or by Mario. (*Id.,* pp. 19-21).

Mario Tait testified that petitioner claimed that Mario had sold the car to him. Petitioner indicated that he had sold the car to another man who still owed him $1,000. Petitioner told Mario that he wanted $500 to $1,000 from Mario "to squash the deal" because he got the car back. According to Mario, Robert advised petitioner to talk to Mario about it on the street. (*Id.,* pp. 60-61).

2

*Thomas v. Perry,* No. 2:11-CV-14363

As the argument progressed, Robert warned petitioner to "get the hell off [his] property."  Robert had a baseball bat near his door and may have reached for it. However, Robert claimed that he did not use it. (*Id.,* pp. 22-24).

Mario testified that petitioner said he was "going to have to run something" (i.e., $1,000), but denied hearing petitioner say: "[I]t's going to down in this bitch." (*Id.,* pp. 62-63).

Both Mario and Robert testified that petitioner was angry or upset as he left their house. (*Id.,* pp. 21, 24, 41, 63-64, 88).  Robert testified that as he exited the house, petitioner indicated that "he'd be back," and he repeated this remark as he drove away. (*Id.,* pp. 21, 24).

Within 45 minutes to an hour, Robert and Mario both heard several  gunshots. Robert went to the front door, but saw nothing.  Mario denied saying he heard gunshots within 15 minutes of the earlier confrontation. (*Id.,* pp. 25, 43, 65).  Both men went outside and discovered bullet holes in three of their living room windows.  Mario also saw holes in their neighbor's house.  Robert discovered bullet holes in his living room walls. (*Id.,* pp. 27-28, 30, 66-67).

After the shooting, petitioner called Mario and spoke to him three or four times. (*Id.,* p. 70).  During these conversations, Mario asked petitioner why he had shot at his house.  Petitioner denied shooting at the Taits' home.  The two men again discussed the issue of the car but according to Mario, neither man threatened the other.  During the conversations, petitioner became angrier and at one point told Mario "to run something" and he would see him "in the streets." (*Id.,* pp. 70-74, 83-89).

3

*Thomas v. Perry,* No. 2:11-CV-14363

Mario Tait testified that the police arrived about twenty minutes after he had called him.  However, Detroit Police officer Edmund Rudoni testified that he arrived between 10:00 and 10:30 a.m., within minutes of being dispatched. (*Id.,* pp. 74, 90-91, 96-97, 102).  Officer Rudoni believed that he encountered Robert first. (*Id.,* pp. 101, 103, 105).  Officer Rudoni testified that Mario Tait was excited, talking fast, and waving his hands around.  Mario informed Officer Rudoni that petitioner had been to their house, demanding money for a car.  Mario informed  him that he and his father were upstairs when they heard gunshots and looked out the window to see petitioner, next to a 1996 or 1997 red Corvette, firing shots into their house.  Petitioner got into the red Corvette and drove south to Mack. (*Id.,* pp. 91-96, 102-103).

Two days after the shooting, Robert talked to the police.  Robert wrote out a statement in which he accused petitioner of shooting up his house. (*Id.,* pp. 32-35, 46-47, 53-54).  At the time that Robert made that statement, he identified petitioner's mug shot. (*Id.,* pp. 35-36).  At the trial, Robert confirmed the accuracy of his statement to the prosecutor before the preliminary examination. (*Id.,* pp. 36-38, 53).  At the preliminary examination, however, he denied seeing anything, claiming that unknown passersbys had identified petitioner as the shooter and he had simply passed that information on to the police.  At trial, Robert stuck with that story.(*Id.,* pp. 38, 48-52, 54).

On Friday, May 23, 2003, a prosecutor questioned Mario under oath after he responded to an investigative subpoena. (*Id.,* pp. 75-76, 87).  At trial, Mario denied telling the police that after Robert left for work, petitioner called, saying that he had to do something or he was "coming back to take my car; I'm going to shoot that bitch up."

4

*Thomas v. Perry,* No. 2:11-CV-14363

Mario testified that this was something the police invented and "put in" his investigative

subpoena transcript. (*Id.,* pp. 76-77, 88).  Mario further denied that when petitioner

called while the police were at his house, petitioner said:

> You going to play me like that dog . . . . That's why you got yo shit shot up.
> . . . It ain't over yet.

> (*Id.,* p. 77).

Mario remembered asking petitioner why he kept calling and explaining that the

matter was in the the hands of the police. (*Id.,* p. 78).  Mario, however, denied telling the

police that petitioner responded:

> [D]o you think I give a fuck about the police, them mother fuckers, and  they
> better come. . . . It's either ride or die from here. . . . You going to call the
> police on me? You going put the police on me? Somebody going [to] die, you
> know what I'm saying?

> (*Id.,* p. 78).

Mario's investigative subpoena testimony was subsequently admitted into

evidence. (*Id.,* pp. 111-114).  Mario testified at the investigative subpoena hearing that

after the initial confrontation between petitioner and his father Robert, he received a

telephone call from petitioner.  Petitioner told Mario that he had to run something or do

something because petitioner was coming back to take his car.  Petitioner threatened

that he was "goin' [to] shoot that bitch up."  Mario told petitioner that he had nothing for

him because he bought the car at auction.  Petitioner replied "[o]kay, we uh see" and

hung up. (Tr. 5/23/03, p. 7).

Five minutes later, Mario was walking out the back door when he heard about

eight gunshots in front of their house.  Mario observed a car with petitioner inside of it

5

*Thomas v. Perry,* No. 2:11-CV-14363

driving away from the house.  A neighbor said: "Yeah, it was a guy that just left here in a burgundy Oldsmobile Cutlass like a 1992."  Mario replied that this was petitioner.  The neighbor said that the man had a tattoo on his neck and arm.  Mario noticed tattoos on petitioner as well. (Tr. 5/23/03, pp. 8, 14-16).  Petitioner has tattoos on his neck and arms. (Tr. 6/23/04, p. 100).

Petitioner called Mario within five or ten minutes after the shooting and after the police had arrived.  Petitioner said to Mario: "You goin' play me like that dog. . . . That's why you got yo' shit shot up. . . . It ain't over yet."  Petitioner further said: "Fuck you, you can have the car because you ain't goin' do nothing but die in the car."  When Mario explained that the police and his father were involved because petitioner shot up his father's house, petitioner said: "I don't give a fuck when I shoot that bitch up. I'm gone [sic? gonna'] shoot you." (Tr. 5/23/03, 8, 18).

In a subsequent telephone call, petitioner told Mario:

Do you think I give a fuck about the police, them motha' fuckas. . . .It's either ride or die from here. . . . You goin' call the police on me?  You goin['] put the police on me? Somebody goin' die. . .

(*Id.,* p. 14).

The last time petitioner called, he said it was "cool" and that Mario could have the car.  Petitioner said he didn't even want the car.  Petitioner said: "you goin' die in that mother fucka' too." (*Id.,* p. 14).

The trial judge acquitted petitioner of assault with intent to murder as to Robert Tait, but convicted petitioner of assault with intent to murder Mario Tait, rejecting Mario's trial testimony that his investigative subpoena testimony was inaccurate.  The judge

*Thomas v. Perry,* No. 2:11-CV-14363

also convicted petitioner of discharging a weapon into an occupied building, discharging

a weapon from a vehicle, carrying a weapon with unlawful intent, being a felon in

possession of a firearm, and felony firearm.

(Tr. 7/9/04, pp. 22-36).

Petitioner's conviction was affirmed on appeal. *People v. Thomas*, No. 258394,

2007 WL 189347 (Mich. Ct. App. January 25, 2007); *lv. den.* 478 Mich. 928, 732

N.W.2d 905 (2007).

Petitioner then filed a motion for relief from judgment pursuant to M.C.R. 6.500,

*et. Seq.,* which was denied. *People v. Thomas,* No. 04-003659-01 (Wayne County

Circuit Court, June 19, 2009).  The Michigan appellate courts denied petitioner leave to

appeal. *People v. Thomas*, No. 298522 (Mich. Ct. App. March 3, 2011); *lv. den.* 490

Mich. 870, 802 N.W.2d 615 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Petitioner's issues are not subject to procedural default and may be
heard on the merits.

II. Petitioner was denied the constitutional right to effective assistance of
appellate counsel.

III. Newly discovered evidence and the unconstitutional means used to
deny proper consideration of that evidence, permit granting of habeas
relief in the form of a new trial.

IV. Petitioner's conviction was both unlawful and unconstitutional due to an
invalid waiver of the right to trial by jury.

V. There was insufficient evidence to convict.

VI. Petitioner was denied his constitutional right to assistance of counsel.

*Thomas v. Perry,* No. 2:11-CV-14363

VII. Prosecutorial misconduct denied petitioner a fundamentally fair trial.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

8

*Thomas v. Perry,* No. 2:11-CV-14363

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.  Discussion

**A.   Petitioner's issues are not subject to procedural default and may be heard on the merits.**

Respondent argues that petitioner's third, fourth, seventh, and a portion of his sixth claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to

9

*Thomas v. Perry,* No. 2:11-CV-14363

raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

As a preliminary matter, it is does not appear that petitioner's sufficiency of evidence claim is procedurally defaulted. The trial court judge denied petitioner's sufficiency of evidence claim based on her erroneous assumption that this claim had already been adjudicated on petitioner's direct appeal. M.C.R. 6.508(D)(2) indicates that a court in Michigan should not grant post-conviction relief if the post-conviction motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision[;]" 6.508(D)(2) is a rule of *res judicata* which bars a defendant from re-litigating claims in a post-conviction motion which have already been adversely decided against him or her. Thus, the state trial court judge's denial of petitioner's sufficiency of evidence claim based upon *res judicata* does not constitute a procedural bar that would preclude habeas review of

10

*Thomas v. Perry,* No. 2:11-CV-14363

petitioner's claim on the merits. *See Hicks v. Straub,* 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).

**B.    Petitioner was denied the constitutional right to effective assistance of appellate counsel.**

With respect to petitioner's remaining post-conviction claims, petitioner claims that his appellate counsel was ineffective for failing to raise his post-conviction claims in his appeal of right.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Additionally, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).

**C.    Newly discovered evidence and the unconstitutional means used to deny proper consideration of that evidence, permit granting of habeas relief in the form of a new trial.**

In his third claim, petitioner argues that he is entitled to habeas relief because he has newly discovered evidence in the form of an affidavit from Mary Smith, Mario

11

*Thomas v. Perry,* No. 2:11-CV-14363

Tait's girlfriend, who was present at the Taits' house at the time of the shooting and who claims that petitioner did not shoot at the Taits' house, but that two other men were responsible for the shooting.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id.* Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases). Therefore, a claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a new trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *See Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim", *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to

12

*Thomas v. Perry,* No. 2:11-CV-14363

recognize a freestanding innocence claim in habeas corpus, outside of the

death-penalty context.  Petitioner is therefore is not entitled to relief for his third claim

under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709,

711 (6th Cir. 2007).

> **D.      Petitioner's conviction was both unlawful and unconstitutional due to an invalid waiver of the right to trial by jury.**

Petitioner next claims that his jury trial waiver was invalid.

Petitioner raised this claim in his post-conviction motion for relief from judgment.

The judge rejected the claim, finding that petitioner had signed a waiver of jury trial

form on June 23, 2004 and orally affirmed in court that he wished to proceed to with a

bench trial. *People v. Thomas,* No. 04-003659-01, Slip. Op. at 4.

A review of the trial transcript shows that defense counsel indicated that she had

discussed the matter with petitioner and he had elected to proceed with a bench trial.

Counsel indicated that petitioner was signing the waiver of jury trial form.  On the

record, petitioner indicated that he had discussed the matter with his attorney and

wished to waive his right to a jury trial and agreed to be tried by the judge.  In response

to the judge's question, petitioner indicated that he understood that he had a right to a

jury trial but that he agreed to a bench trial.  Petitioner further indicated that he was

voluntarily waiving his right to a jury trial.  Petitioner further acknowledged signing the

waiver of jury trial form.  In response to a question from the judge, petitioner specifically

*Thomas v. Perry,* No. 2:11-CV-14363

denied that anyone had promised him anything to get him to waive his right to a jury

trial. (Tr. 6/23/04, pp. 3-6).

    The burden of demonstrating that a waiver of a jury trial was invalid lies with the

defendant who waived it. *See Sowell v. Bradshaw,* 372 F. 3d 821, 832 (6th Cir. 2004).

"[A]lthough recommended, there is no federal constitutional requirement that a court

conduct an on-the-record colloquy with the defendant prior to accepting the jury

waiver." *Spytma v. Howes,* 313 F. 3d 363, 370 (6th Cir. 2002); *See also Fitzgerald v.*

*Withrow,* 292 F. 3d 500, 504 (6th Cir. 2002)(neither an oral colloquy, nor any other

particular form of waiver, is required for a valid waiver of jury trial as a matter of federal

constitutional law).  Moreover, "[t]echnical knowledge of the jury trial right is not

required for waiver to be effective." *Spytma*, 313 F. 3d at 370 (internal quotation

omitted).  Most importantly, "there is a knowing and intelligent waiver where the

defendant 'understood that the choice confronting him was, on the one hand, to be

judged by a group of people from the community, and on the other hand, to have his

guilt or innocence determined by a judge.'" *Sowell*, 372 F. 3d at 836 (quoting *United*

*States v. Sammons*, 918 F. 2d 592, 597 (6th Cir. 1990)(internal quotation omitted)).

    In the present case, the trial court advised petitioner that he had a right to have

a jury decide his case.  Petitioner indicated that he understood that he had a right to

have a jury trial but stated that he wished to be tried by the judge sitting without a jury.

Petitioner also specifically denied that any promises had been made to get him to

waive his right to a trial by jury.  Under the circumstances, petitioner voluntarily waived

14

*Thomas v. Perry,* No. 2:11-CV-14363

his right to a jury trial after being advised by the trial court judge of his right to a jury

trial.

In addition, the mere fact that petitioner waived his right to a jury trial because

he believed that he had a better chance at acquittal with a non-jury trial would not

render the waiver invalid. A criminal defendant may have sound tactical reasons for

relinquishing a jury trial in favor of a bench trial. *See Adams v. United States ex. rel.*

*McCann*, 317 U.S. 269, 278 (1942)("And since trial by jury confers burdens as well as

benefits, an accused should be permitted to forego its privileges when his competent

judgment counsels him that his interests are safer in the keeping of the judge than of

the jury."). The state post-conviction judge's decision that petitioner's jury trial waiver

was not involuntary under these circumstances was not an unreasonable application of

clearly established federal law. *See Sowell*, 372 F.3d at 835 (concluding that a

petitioner's decision to waive his right to a jury trial in a capital case was not unknowing

or involuntary where the waiver was made on the advice of defense counsel that a

three-judge panel would not impose the death penalty). In this case, petitioner "took a

litigation risk and lost; these facts alone do not create a constitutional violation." *Id.*

Moreover, "there is no constitutional requirement that a defendant be affirmatively

disabused of the idea that he will get more lenient treatment if he waives a jury trial."

*See Highers v. Kapture*, 93 Fed. Appx. 48, 50 (6th Cir. 2004).

On habeas review of a state court conviction, a federal court is "required to give

a high measure of deference to the state court's findings concerning a jury waiver."

*Spytma,* 313 F. 3d at 371. After reviewing the trial court record, this Court concludes

15

*Thomas v. Perry,* No. 2:11-CV-14363

that the state court's determination that petitioner knowingly and voluntarily waived his right to a jury trial was not an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on his fourth claim.

### E.    There was insufficient evidence to convict.

Petitioner next contends that there was insufficient evidence to establish his identity as the perpetrator of the crimes in this case.

Before ruling on the merits of petitioner's sufficiency of evidence claim, this Court notes that none of the state courts ever addressed the merits of this claim. Petitioner raised his sufficiency of evidence claim for the first time in his post-conviction motion for relief from judgment.  The trial court judge declined to adjudicate the claim on the merits, because she mistakenly believed that this claim had been rejected by the Michigan Court of Appeals on petitioner's direct appeal.  The Michigan Court of Appeals, however, did not adjudicate petitioner's sufficiency of evidence claim on direct review because this claim had not been raised by petitioner on his appeal of right.

When a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell,* 129 S. Ct. 1769, 1784 (2009); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *See also McKenzie v. Smith,* 326 F. 3d 721, 726 (6th Cir. 2003).  In this case, "there are simply no results, let alone reasoning, to which this court can defer.  Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved

16

*Thomas v. Perry,* No. 2:11-CV-14363

an unreasonable application of clearly established Federal law,' 28 U.S.C. §

2254(d)(1), would be futile." *McKenzie,* 326 F. 3d at 727.

It is beyond question that "the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364

(1970). But the critical inquiry on review of the sufficiency of the evidence to support a

criminal conviction is, "whether the record evidence could reasonably support a finding

of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

This inquiry, however, does not require a court to "ask itself whether *it* believes that the

evidence at the trial established guilt beyond a reasonable doubt." Instead, the

relevant question is whether, after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote

omitted)(emphasis in the original). The *Jackson* standard applies to bench trials, as

well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

Moreover, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to

weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal*

*v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to

the fact finder for its assessment of the credibility of witnesses. *Matthews v.*

*Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003); *See also Butzman v. U.S.,* 205 F. 2d

*Thomas v. Perry,* No. 2:11-CV-14363

343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge).

Petitioner contends that there was insufficient evidence to establish his identity as the perpetrator of the crimes because neither Robert nor Mario Tait positively identified him at trial as being responsible for the shooting, nor was there any physical evidence which linked him to the crime.

In the present case, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that petitioner discharged a weapon at the Taits' home. Mario Tait's testimony from the investigative subpoena hearing was admitted into evidence as a prior inconsistent statement made under oath.  Under both federal and Michigan law, a prior inconsistent statement that is made under oath is not considered hearsay and can be used as substantive evidence. *See United States v. Ricketts,* 317 F.3d 540, 544 (6th Cir. 2003)(citing F.R.E. 801(d)(1)(A)); *People v. Chavies,* 234 Mich. App. 274, 281-84; 593 N.W. 2d 655 (1999)(citing M.R.E. 801(d)(1)(A)).  Mario Tait at the investigative subpoena hearing testified that he witnessed petitioner driving away from his house at the time of the shooting.  Mario Tait further testified that petitioner subsequently called his house up and admitted to shooting at the house.  In addition to Mario Tait's investigative subpoena testimony, Officer Rudoni testified that Mario Tait identified petitioner as the shooter within minutes of the shooting.

"[E]xtrajudicial witness identifications are routinely used as substantive evidence of guilt." *Foxworth v. St. Amand*, 570 F.3d 414, 427 (1st Cir. 2009)(*citing Samuels v. Mann*, 13 F. 3d 522, 527 (2nd Cir. 1993); Fed.R.Evid. 801(d)(1)(C).  Moreover, the fact

18

*Thomas v. Perry,* No. 2:11-CV-14363

that neither of the Taits identified petitioner in court would not render the evidence insufficient to convict petitioner.  "There is no requirement, either in the Constitution or in the usual rules that apply to the admission of evidence, that a witness who makes an extrajudicial identification of a criminal defendant must repeat the identification in the courtroom." *Foxworth,* 570 F. 3d at 427; *See also Bugh v. Mitchell,* 329 F. 3d 496, 505-11 (6th Cir. 2003)(upholding the admission of out-of-court statements of a minor victim which were admitted under Ohio Evid. R 801(d)(1)(C) as a prior identification of petitioner, even though victim was unwilling to testify about the statements at trial and did not remember making them).

Finally, in addition to the direct evidence of petitioner's guilt, there was circumstantial evidence which established his identity as the shooter.  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

The evidence in this case established that there had been an on-going dispute between petitioner and Mario Tait over the ownership of an automobile.  Petitioner came to the Taits' house looking to speak with Mario Tait about this vehicle.  Petitioner got into an argument with Robert Tait, who pulled a baseball bat out and ordered petitioner to leave the house.  Petitioner left the Tait house upset and angry, promising

19

*Thomas v. Perry,* No. 2:11-CV-14363

to return to the house.  Within forty five minutes to an hour, the Taits' house was shot up.

Because there were multiple pieces of evidence, including eyewitness testimony, to establish petitioner's identity as the perpetrator of the shooting, the evidence was sufficient to convict petitioner of these crimes. *See e.g. Moreland v. Bradshaw,* 699 F. 3d 908, 919-21 (6th Cir. 2012).  Petitioner is not entitled to habeas relief on his fifth claim.

**F.    Petitioner was denied his constitutional right to assistance of counsel.**

In this claim, petitioner alleges the ineffective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

20

*Thomas v. Perry,* No. 2:11-CV-14363

been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

Petitioner first alleges that his trial counsel was ineffective for failing to object to the admission of Mario Tait's investigative subpoena testimony. The Michigan Court of Appeals rejected petitioner's claim, finding that Tait's testimony from the investigative subpoena hearing was admissible pursuant to M.R.E. 801(d)(1)(A), because it was a prior inconsistent statement which had been made under oath which contradicted Tait's trial testimony. *Thomas,* No. 258394, Slip. Op. at 2.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that Mario Tait's investigative subpoena testimony was properly admitted under Michigan law as a prior inconsistent statement made under oath, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721

21

*Thomas v. Perry,* No. 2:11-CV-14363

(E.D. Mich. 2003).  Because the Michigan Court of Appeals determined that the investigative subpoena testimony was properly admitted under M.R.E. 801(d)(1)(A) as a prior inconsistent statement made under oath, petitioner is unable to establish that he was prejudiced by counsel's failure to object to the admission of this testimony.

As a related claim, petitioner claims that counsel was ineffective for failing to move for the redaction of Mario Tait's investigative subpoena testimony in order to keep out various hearsay statements and irrelevant and prejudicial information that Tait had brought up during his deposition.  Petitioner specifically points to testimony from Tait that some of his neighbors had identified petitioner as the shooter, as well as testimony from Tait that petitioner had been known to carry weapons.  Tait also testified at his deposition about rumors that petitioner had stolen tire rims off of a motor vehicle and that he promised to give Mario Tait a new car.  Tait also testified about petitioner's street name and his girlfriend.

The Michigan Court of Appeals agreed that all of this evidence was hearsay or irrelevant, but concluded that petitioner was not prejudiced by counsel's failure to seek the redaction of this testimony in light of the fact that Mario Tait testified at this investigative subpoena hearing that he personally witnessed petitioner shoot at the house and that petitioner was in possession of a gun.  The Michigan Court of Appeals further found that the rumors about petitioner stealing tire rims, petitioner offering to give Mario Tait a new car, petitioner's street name, and the identity of his girlfriend, did not prejudice petitioner because they were collateral issues or did not link petitioner to

22

*Thomas v. Perry,* No. 2:11-CV-14363

the shooting nor did this evidence affect Mario Tait's identification of petitioner as the shooter. *Thomas,* Slip. Op. at 3-4.

In the present case, even if counsel provided deficient performance in deciding not to seek redaction of certain hearsay or irrelevant evidence from the investigative subpoena hearing, the effect of this evidence was harmless given the substantial amount of independent evidence of guilt against petitioner.  Petitioner is therefore not entitled to habeas relief on this claim. *Lewis v. Russell*, 42 Fed. Appx. 809, 811 (6th Cir. 2002).

Petitioner next claims that trial counsel was ineffective for failing to adequately cross-examine Mario Tait at trial.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d at 651.  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

The Michigan Court of Appeals rejected petitioner's claim:

Defense counsel repeatedly claimed that she did not cross-examine Mario in more depth because "everything was going our way."   On direct examination at trial, Mario completely denied the veracity of every statement made at the deposition.   In fact, Mario denied making the statements transcribed at the investigative subpoena deposition. Defense counsel admitted at the *Ginther* hearing [1] that the court reporter honestly transcribed the statements made at the deposition. Therefore, Mario's denial of making

---

[1]  *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973)(footnote added).

23

*Thomas v. Perry,* No. 2:11-CV-14363

those statements was not credible. Had defense counsel cross-examined Mario in more depth regarding the inconsistencies in his testimonies, defense counsel would have further highlighted the incredible claim that Mario never made the challenged statements at the investigative subpoena deposition.  Since Mario's testimony at trial was favorable to defendant, defense counsel decided to "leave it alone."

*Thomas,* Slip. Op. at 5.

In the present case, counsel testified at the *Ginther* hearing that she did not cross-examine Mario Tait because he had denied making any of the statements at the investigative subpoena hearing that incriminated petitioner.  Because Mario's trial testimony was favorable to petitioner, defense counsel decided not to cross-examine him in more detail, so as to avoid highlighting Mario Tait's claim that he had never made these inculpatory statements at the investigative subpoena hearing. (Tr. 9/30/05, pp. 60-63).  Although other attorneys might have reached a different conclusion about the value of cross-examining Mario Tait in greater detail, counsel's strategic choice not to cross-examine Tait was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002)(quoting *Strickland*, 466 U.S. at 689).  Indeed, counsel's strategic choice to forego more in-depth cross-examination is "virtually unchallengeable" because she made it after considering the relevant law and facts of the case. *Id.*  Finally, petitioner has failed to identify how additional impeachment of Mario Tait would have affected the judge's decision.  Defense counsel did not perform ineffectively by not more forcefully cross-examining Mario Tait, particularly when the effect of further probing was entirely

*Thomas v. Perry,* No. 2:11-CV-14363

speculative on petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012); *cert. den. sub. nom. Jackson v. Robinson,* 133 S. Ct. 983 (2013).

As a related allegation, petitioner next contends that trial counsel was ineffective for choosing to present a defense at trial that the witnesses lacked personal knowledge of the events in question, rather than challenging Mario Tait's credibility. Petitioner's claim suffers from the same flaw as his inadequate cross-examination claim. At trial, neither of the Taits presented any incriminating evidence against petitioner. Mario Tait specifically disavowed his investigative subpoena testimony. Because Mario Tait had testified favorably for petitioner at his trial, it was a reasonable strategy for counsel to argue that neither he nor his father had any personal knowledge of the shooting, rather than to challenge Mario Tait's credibility.

Finally, petitioner alleges that trial counsel was ineffective for advising him to waive a jury trial and proceed with a bench trial. Petitioner specifically claims that trial counsel advised petitioner to waive a jury trial out of a motive of self-interest to get the trial over as quickly as possible.

At the *Ginther* hearing, counsel testified that the decision to proceed with a bench trial was not made on the morning of trial, as petitioner suggests, but only after she had conferred with her client at the jail. (Tr. 9/30/05, p. 24). Counsel indicated that she tried about 10 jury trials and 20 bench trials in a given year. (*Id.,* p. 64). Contrary to petitioner's allegation, counsel did not testify at the *Ginther* hearing that she preferred to do bench trials. Nor was any evidence presented at the *Ginthe*r hearing to

25

*Thomas v. Perry,* No. 2:11-CV-14363

suggest that counsel had recommended that petitioner waive his jury trial so that she could get the trial over quickly.

A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a "classic example of strategic trial judgment" for which *Strickland* requires highly deferential judicial scrutiny, particularly on habeas review. *See Walendzinski v. Renico,* 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005)(citation omitted). A defense counsel's advice to a client to waive his jury "constitutes a conscious, tactical choice between two viable alternatives." *Id.* In the present case, petitioner's counsel could have reasonably believed that it was better strategy for petitioner to be tried by the judge rather than a jury, and petitioner has failed to offer any evidence to the contrary. *Id. See also Willis v. Smith,* 351 F. 3d 741, 746 (6th Cir. 2003).

Moreover, petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial, because he has presented no evidence that the trial judge was biased against him in any way. *Willis,* 351 F. 3d at 746. Finally, trial counsel's advice to petitioner to waive a jury trial and to proceed with a non-jury trial did not prejudice petitioner, where it was unlikely that a jury would have acquitted petitioner after hearing the same persuasive evidence that the trial court judge heard in this case. *Walendzinski,* 354 F. Supp. 2d at 758.

In waiving petitioner's trial by jury, counsel was not ineffective. *See Dickerson v. Bagley,* 453 F. 3d 690, 700 (6th Cir. 2006). Indeed, petitioner's counsel "had to make a choice between the two modes of trial, and it was impossible to say at the time which

26

*Thomas v. Perry,* No. 2:11-CV-14363

would be better for [her] client." *Id.* There are no standards set out in the case law or the ABA Guidelines that establish professional norms as to how an attorney and his or her client should go about making the choice whether to proceed with a jury or bench trial. In the absence of such standards, this Court cannot conclude that counsel was ineffective for advising petitioner to waive his right to a jury trial. *Id.*

### G.   Prosecutorial misconduct denied petitioner a fundamentally fair trial.

Petitioner lastly contends that the prosecutor committed misconduct by seeking the admission of the investigative subpoena deposition.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(*citing Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964

27

*Thomas v. Perry,* No. 2:11-CV-14363

(6th Cir.1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Although petitioner has framed his claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009).  "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  The Michigan Court of Appeals concluded that Tait's investigative subpoena testimony was properly admitted pursuant to M.R.E. 801(d)(1)(A).  Because the evidence was properly admitted, the prosecutor did not commit misconduct in this case.

### H.  A Certificate of Appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

28

*Thomas v. Perry,* No. 2:11-CV-14363

322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason could find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85.  Any doubt regarding whether to grant a COA from the denial of a petition for federal habeas relief is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004).  Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the lengthy prison sentence that he is serving. The Court thus issues petitioner a COA.

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Thomas is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability.

S/Arthur J. Tarnow
Arthur J. Tarnow
Dated: April 23, 2013          Senior United States District Judge

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on April 23, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

29